# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LIBERTARIAN PARTY OF ILLINOIS, LUPE DIAZ, JULIA A. FOX, and JOHN KRAMER, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Joan B. Gottschall |
| ILLINOIS STATE BOARD OF ELECTIONS and WILLIAM M. McGUFFAGE, JESSE R. SMART, HAROLD D. BYERS, BETTY J. COFFRIN, ERNEST L. GOWEN, JUDITH C. RICE, BRYAN A. SCHNEIDER, and CHARLES W. SCHOLZ in their Official Capacities as Members of the Illinois State Board of Elections, | ) ) ) ) ) ) ) ) ) ) | Case No. 12 C 2511 |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

The Libertarian Party of Illinois, its chairman Lupe Diaz, prospective candidate for Kane County Auditor Julia Fox, and Fox supporter John Kramer (collectively "Plaintiffs") filed a complaint for declaratory and injunctive relief on April 5, 2012, against the Illinois State Board of Elections (the "Board") and eight individual Board members in their official capacities (collectively "Defendants"). Plaintiffs want to form a new political party in Kane County, Illinois. They contest as unconstitutional as applied to them two requirements of the Illinois Election Code (the "Code"), 10 Ill. Comp. Stat. 5/10-2 and -6. Plaintiffs bring a claim under 42 U.S.C. § 1983 for alleged violations of their First Amendment rights to associate for the advancement of their political beliefs and to vote effectively, as well as their Fourteenth Amendment rights to due process and

equal protection. Now before the court is Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The court dismisses the Board as a defendant because, as a state agency, it is immune from suit under the Eleventh Amendment. The court denies Defendants' motion to dismiss Plaintiffs' First and Fourteenth Amendment Claims against the individual Board members in their official capacities.

**I. BACKGROUND**

The Code imposes requirements on new political parties and independent candidates that differ from those imposed on "established" political parties, "which, at the general election next preceding, polled more than 5% of the entire vote cast in the State, district, or unit of local government." 5/10-1. New political parties and independent candidates are governed by Article 10 of the Code. The Code requires a group wishing to form a new party at the level of a political subdivision (such as a county) to submit a petition "signed by qualified voters equaling in number not less than 5% of the number of voters who voted at the next preceding regular election" in that political subdivision. 5/10-2.

Two additional requirements of the Code are at issue here. First, Article 10, as interpreted by the Illinois Supreme Court, requires a new party to field a complete list of candidates for all offices in the political subdivision in which it wishes to compete:

> Any . . . petition for the formation of a new political party throughout the State, or in any such district or political subdivision . . . shall at the time of

---

[1] Defendants' motion also refers to Rule 12(b)(1), which governs dismissal for lack of subject-matter jurisdiction. The Seventh Circuit, however, has treated a motion to dismiss on the ground of state sovereign immunity as a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. *See Blagojevich v. Gates*, 519 F.3d 370, 371 (7th Cir. 2008) ("Sovereign immunity concerns the remedy rather than adjudicatory competence."); *Reynolds v. United States*, 549 F.3d 1108, 1111-12 (7th Cir. 2008); *Joseph v. Bd. of Regents*, 432 F.3d 746, 748 (7th Cir. 2005).

2

> filing contain a complete list of candidates of such party for all offices to be filled in the State, or such district or political subdivision as the case may be, at the next ensuing election then to be held[.]

5/10-2 at ¶ 4; *Reed v. Kusper*, 607 N.E.2d 1198, 1202 (Ill. 1992) ("[T]he statute clearly requires that the petition for the formation of [a new party] shall contain a complete list of candidates for *all* offices to be filled within the political subdivision.").

Article 10 also imposes a filing deadline for the petition:

> [C]ertificates for the nomination of candidates shall be filed with the county clerk of the respective counties not more than 141 but at least 134 days previous to the day of such election.

5/10-6. For the November 2012 election, the 134-day requirement resulted in a filing deadline of June 25, 2012.

Plaintiffs claim that the June 25, 2012, deadline for filing nomination petitions and the requirement that new parties field a full slate of candidates for county offices unconstitutionally burden their First Amendment rights and violate their Fourteenth Amendment rights to equal protection and due process of law.[2] Defendants move to dismiss on the grounds that the Board and the individual Board members are not proper parties to the suit, and that Plaintiffs have failed to state a claim upon which relief can be granted, because the requirements imposed by the Code are constitutional.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs are required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level;'" otherwise, "the plaintiff pleads itself

---

[2] Plaintiffs initially challenged as unconstitutionally vague the provision of 5/10-2 governing the number of petition signatures that must be obtained for a new party to appear on the ballot in a local election. Plaintiffs state in their Response Brief, however, that they no longer challenge the signature requirement. (Pls.' Mem. in Opp'n to Mot. to Dismiss 2 n.1, ECF No. 18-1.)

3

out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The court treats all well-pleaded allegations as true and draws all reasonable factual inferences in Plaintiffs' favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009).

## III. ANALYSIS

### A. Eleventh Amendment Immunity and the *Ex Parte Young* Exception

1. The Illinois State Board of Elections

Defendants first argue that the Board is immune from suit under the Eleventh Amendment. The Eleventh Amendment provides a state with immunity from suit in federal court unless the state consents to the suit or Congress has abrogated its immunity. *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996). State agencies are treated as states for Eleventh Amendment purposes. *Tucker v. Williams*, 682 F.3d 654, 658 (7th Cir. 2012). The Supreme Court has held that there is no exception to state sovereign immunity for § 1983 claims. *Quern v. Jordan*, 440 U.S. 332, 342 (1979). The Court has also held that states and their departments are not "persons" within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

The court agrees with Defendants that, because the Board is a state agency, it is immune from suit under § 1983. *See Kuna v. Ill. Bd. of Elections*, 821 F. Supp. 2d 1060, 1066 (S.D. Ill. 2011) (dismissing § 1983 claim against the Board on immunity grounds); *Hulme v. Madison Cnty.*, No. 01-CV-0456-DRH, 2001 WL 1803690, at *3 (S.D. Ill. Aug. 29, 2001) (same). The court therefore dismisses Plaintiffs' claims against the Board.

4

2. The Board Members

The dismissal of the Board itself is of little moment if its members can be sued in their official capacities for the relief Plaintiffs seek. Under *Ex Parte Young*, 209 U.S. 123, 159-60 (1908), federal courts may award injunctive relief in suits against state officials sued in their official capacities for violations of federal law. "Where a plaintiff seeks prospective relief to end a state officer's ongoing violation of federal law, such a claim can ordinarily proceed in federal court." *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 288 (1997).

Defendants acknowledge that state officials may be sued for prospective injunctive relief. They argue, however, that the particular officials Plaintiffs have sued in this case—the members of the Board—have no enforcement authority over elections at the county level. Defendants argue that Plaintiffs should have named as a defendant the Kane County Clerk or another county official, not the members of the Board, because nominating petitions for county offices are filed with the county clerk and processed at the county level.

The court finds that, drawing all inferences in favor of Plaintiffs, the Complaint alleges an injury that is traceable to the Board members' enforcement of the Code, and that the Board members are subject to suit for injunctive relief under *Ex Parte Young*. The Complaint alleges that according to 10 Ill. Comp. Stat. 5/1A-1, the Board "has general supervision over the administration of the registration and election laws throughout the State of Illinois." (Compl. ¶ 10, ECF No. 1.) Plaintiffs' alleged injuries stem from the implementation of state election laws. Plaintiffs may wish to amend the

Complaint to name the Kane County Clerk as an additional defendant, but their allegations against the Board members are sufficient to survive a motion to dismiss.

**B. The Illinois Election Code**

The restrictions imposed by a state on a political party or candidate's access to the ballot may infringe upon two fundamental constitutional rights: "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). If the ballot access restrictions treat similarly situated parties or candidates unequally, they may also violate the Fourteenth Amendment right to equal protection of the laws. *See Anderson v. Celebrezze*, 460 U.S. 780, 786 n.7 (1983); *Lubin v. Panish*, 415 U.S. 709, 713-14 (1974).

Despite these constitutional protections, "[s]tates may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 510 U.S. 351, 358 (1997). In assessing whether such regulations infringe too greatly upon First and Fourteenth Amendment rights, the "'character and magnitude' of the burden" on those rights must be weighed against the state's interests in regulation. *Id.* (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)). According to the Supreme Court, severe burdens on associational rights must be narrowly tailored to advance a compelling state interest, but "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788). The Court has also stated repeatedly that there is no

"'litmus test' that would neatly separate valid from invalid restrictions;" rather "a court must identify and evaluate the interests put forward by the State as justifications for the burden imposed by its rule, and then make the 'hard judgment' that our adversary system demands." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 190 (2008) (Stevens, J., lead opinion).[3]

A court is "required to evaluate challenged ballot access restrictions together, not individually, and assess their combined effect on voters' and candidates' political association rights." *Nader v. Keith*, 385 F.3d 729, 735 (7th Cir. 2004). For purposes of exposition, the court will examine individually the two provisions of the Code challenged by Plaintiffs. Ultimately, however, the court must address the combined effect of those restrictions on Plaintiffs' First and Fourteenth Amendment rights.

1. The Filing Deadline

An early filing deadline may impose a severe burden on voting and associational rights. *See, e.g.*, *Lee v. Keith*, 463 F.3d 763, 768 (7th Cir. 2006) (striking down deadline 323 days before general election); *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 582 (6th Cir. 2006) (striking down deadline for non-party candidates 120 days before March primary, or a year before general election). There is no precise cut-off separating

---

[3] In *Crawford*, the Court was unable to agree on the rationale for upholding Indiana's voter ID law. The lead opinion authored by Justice Stevens was joined by Chief Justice Roberts and Justice Kennedy. Justice Scalia filed a concurring opinion joined by Justices Thomas and Alito. The other three justices dissented. Justice Scalia argued for a "two-track approach" to evaluating restrictions on voting and associational rights that would apply "deferential" review to "nonsevere, nondiscriminatory restrictions, reserving strict scrutiny for laws that severely restrict the right to vote." *Id.* at 204-5 (Scalia, J., concurring). But both Justice Stevens's lead opinion and Justice Souter's dissent applied a more flexible balancing approach. Justice Souter characterized the Court's method as a "sliding-scale" approach where "the scrutiny varies with the effect of the regulation at issue," rather than "pre-set levels of scrutiny." *Id.* at 210 (Souter, J., dissenting); *see also id.* at 190 n.8 (Stevens, J., lead opinion) ("[O]ur approach remains faithful to *Anderson* and *Burdick*. *Burdick* rejected the argument that strict scrutiny applies to all laws imposing a burden on the right to vote; but in its place, the Court applied the "flexible standard" set forth in *Anderson*. [504 U.S. at 434]. *Burdick* surely did not create a novel 'deferential 'important regulatory interests' standard.'").

a valid from an invalid filing deadline, but the earlier the deadline, the greater the severity of the burden on associational and voting rights, and the more likely that burden is to outweigh the state's regulatory interests. *See Crawford*, 553 U.S. at 190 (Stevens, J., lead opinion).

Here, the June 25, 2012, filing deadline, 134 days before the general election, is significantly later than those which were found to impose a severe burden in *Lee* and *Blackwell*. Plaintiffs do not argue that the deadline creates a barrier so high that new parties and independent candidates are unable to meet the deadline and gain ballot access; neither the Complaint nor Plaintiff's Response indicates that the Libertarian Party itself was unable to meet the filing deadline. And other election-law cases in this circuit, without explicitly addressing the deadline, suggest that independent candidates are frequently able to meet it. *See, e.g.*, *Stone v. Bd. of Elections Comm'rs for the City of Chi.*, No. 10 CV 7727, 2011 WL 66040, at *7 (N.D. Ill. Jan. 10, 2011) ("[T]he number of individuals gaining access to the ballot . . . demonstrates that the statutory requirement [a petition bearing 12,500 signatures for the position of mayor of Chicago] does not pose an insurmountable hurdle to a candidate's access."). Nor do Plaintiffs argue that the deadline is discriminatory. The court concludes that the deadline falls closer to the "reasonable" than the "severe" end of the scale of ballot-access restrictions. Thus, under *Burdick*, the deadline need only be justified by important state regulatory interests. *See* 504 U.S. at 434.

Defendants argue that the state has an important regulatory interest justifying the filing deadline: the need to allow time before an election for the Board to adjudicate the validity of petition signatures and for judicial review of nomination petitions. In *Tobin*

*for Governor v. Ill. State Bd. of Elections*, the Seventh Circuit explained that the Code contains provisions allowing a candidate to obtain a hearing on the validity of a nomination petition prior to the election. 268 F.3d 517, 525-26 (7th Cir. 2001). Objections to the nominating petition must be made in writing within five days after the petition filing deadline. The Board then conducts a hearing, after which the candidate may file a petition for judicial review in the circuit court. That court must then hold a hearing within thirty days and issue a decision "promptly." *Id.* "These statutory provisions should allow candidates to obtain judicial review prior to the election." *Id.* Defendants also point out that absentee ballots may be sent out forty days before the election and that early voting begins twenty-two days before the election, further compressing the time frame for determining the validity of petitions. *See* 10 Ill. Comp. Stat. 5/19-4, 19A-15(a).

Illinois has decided to make a significant amount of pre-election process available for the review of nominating petitions, and the court finds that the state has a legitimate and important regulatory interest in that process. The state also has an important interest in ensuring that its election ballots are printed and sent out in a timely fashion. For these reasons, the court concludes that the filing deadline does not in itself create an unconstitutional burden on Plaintiffs' voting and associational rights. The court now turns to the second challenged requirement of the Code.

    2. The "Complete Slate" Requirement

Plaintiffs challenge the requirement in 5/10-2 of the Code that a new party field a full slate of candidates at the level at which it wishes to contest an election. Illinois' Supreme Court has interpreted 5/10-2 to require that a new party wishing to compete in a

countywide election nominate candidates for *every* county-level office. *Reed*, 607 N.E.2d at 1202.[4]

According to Plaintiffs, Illinois is the only state that has ever had a law requiring a new party to submit a complete slate of candidates for all offices in the jurisdiction in which it wishes to compete. Neither the United States Supreme Court nor the Illinois Supreme Court has addressed the constitutionality of the complete slate requirement. *See Reed*, 607 N.E.2d at 1203 (calling the issue "moot"); *Norman v. Reed*, 502 U.S. 279, 299-300 (1992) (Scalia, J., dissenting) ("Perhaps there are reasons why Illinois' 'complete slate' requirement for political subdivisions is constitutionally invalid. . . . But the litigants here have not addressed whether the 'complete slate' requirement is unconstitutional, and I decline to speculate."). For reasons discussed below, however, the Appellate Court for Illinois' Third District upheld the requirement as constitutional. *Green Party v. Henrichs*, 822 N.E.2d 910, 913 (Ill. App. 2005). The full-slate requirement was also held to be constitutional by a federal court in this district, on the basis that it helped to ensure that "candidates run only once, on the ticket on which they are slated," which served "the state's interest in an efficient electoral purpose." *Black v. Cook Cnty. Officers Electoral Bd.*, 750 F. Supp. 901, 908 (N.D. Ill. 1990). The court will address this reasoning shortly.

The court first assesses the severity of the burden the complete slate requirement places on Plaintiff's voting and associational rights. Plaintiffs argue that requiring a new party to recruit candidates for "myriad races that it may be unable or unwilling to

---

[4] The Board's Candidate's Guide also requires a new party to "file nomination papers for a complete slate of candidates." Illinois State Board of Elections, 2012 Illinois Candidates Guide 39, 41, www.elections.il.gov/Downloads/ElectionInformation/PDF/2012CanGuide.pdf (last visited Aug. 22, 2012).

10

contest" is "unduly onerous." Defendants, in turn, offer little argument as to why the burden is not severe as Plaintiffs allege it to be. They quote *Henrichs*, in which the Illinois Appellate Court reasoned that "[t]he requirement does not prevent any specific individual from running for office, since candidates may run as independents." *Id.*

But although *Henrichs* addresses the burden the complete slate requirement imposes on a particular *individual*'s access to the ballot, its reasoning ignores the burden imposed on Plaintiffs' associational rights. It is true that independent candidacy is an option for those whose new party is insufficiently organized to field a complete list. Thus, the Libertarian Party's failure to meet the complete slate requirement would not prevent Fox from running for Kane County Auditor as an independent. But Fox's party preference would not appear on the ballot, and the Libertarian Party could not promote its views through her candidacy. Political party membership and independent candidacy "are entirely different and neither is a satisfactory substitute for the other." *Storer v. Brown*, 415 U.S. 724, 745-46 (1974). Being able to put forward candidates for political office is the *sine qua non* of a party's existence. *See Cal. Democratic Party v. Jones*, 530 U.S. 567, 575 (2000) ("The moment of choosing the party's nominee, we have said, is 'the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community.'") (quoting *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 216 (1986)). Despite the alternative of independent candidacy, therefore, the complete slate requirement infringes upon "the right of individuals to associate for the advancement of political beliefs." *Williams*, 393 U.S. at 30.

A new party is not required to field a complete list at the state-wide level, but only at the level at which it wishes to become established. This surely lessens the burden of the complete list requirement somewhat. But even at the county level, the requirement appears to create a high barrier to ballot access for a party—high enough to keep third-party candidates off the ballot in recent Illinois elections. *See, e.g.*, *Henrichs*, 822 N.E.2d at 912 (Green Party denied access to ballot in Iroquois County in 2004 because its nominating petition on behalf of three candidates did not nominate candidates for all county board positions). In this case, Plaintiff Fox may not run as a Libertarian unless she has fellow party members in Kane County willing to contest the race for County Coroner, County Recorder, and every other vacant county position.

The requirement also favors established parties over new parties. Established parties do not have to field a complete slate of candidates and frequently do not contest all offices up for grabs in a local election.[5] For example, the 2012 Kane County ballot lists no Democratic Candidate for State's Attorney, County Auditor, or County Board Member for Districts 10, 12, 13, and 15, and no Republican Candidate for County Board Member for Districts 1, 3, 6, and 7. Kane County 2012 General Election Candidates, http://www.kanecountyelections.org/ (last accessed Aug. 22, 2012). In 2010, the Green Party was on the statewide ballot, having received a sufficient portion of the vote in the preceding general election to qualify as an established party. It ran no candidate for Kane County Treasurer, Sheriff, Superintendent of Schools, or County Board. Kane County 2010 General Election Candidates, http://www.kanecountyelections.org/ (last accessed

---

[5] The court takes judicial notice of information available to the public about the Kane County ballot. *See Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (taking judicial notice of information found on the website of a government agency).

Aug. 22, 2012). Established parties often have no candidate who wishes to contest a particular office; their other candidates may nonetheless appear on the ballot.

Although the Illinois Supreme Court declined to address the constitutionality of the complete slate requirement in *Reed v. Kusper*, Justice Heiple argued in dissent that "the meaning which the majority assigns to the statute renders it unconstitutional." 607 N.E.2d at 1203 (Heiple, J., dissenting).[6] Justice Heiple argued that to require a new party to field a full slate of candidates would violate "fundamental fairness":

> [S]ince established political parties are not required to offer full slates of candidates, it does not seem fair to require new political parties to do so. It is quite common and legally acceptable for established political parties to offer slates of candidates with many, or in some cases most, of the positions to be filled left blank. It is difficult, if not impossible, for political parties to offer full slates in all locales. Even established political parties could not meet this requirement if called upon to do so in every case. To impose this requirement on new political parties, while excusing established political parties, amounts to a denial of equal protection of the laws. Moreover, such an interpretation diminishes the right of citizens to vote for candidates of their choice.

*Id.* at 1204.

The Illinois Appellate Court that upheld the full-slate requirement in *Henrichs* reasoned that the disparate treatment of new and established parties was not discriminatory because established and new parties are not similarly situated:

> Although the requirement treats new parties differently than established parties, such disparate treatment is acceptable because new parties are not in the same position as established parties. Established parties are those that have received at least 5% of the vote in the preceding election. . . . Therefore, an established party has already demonstrated that it commands a minimum level of support in the community at large. A new party has not yet shown that it is able to muster support in the community. Therefore it is rational to treat the two classes of party differently.

---

[6] Justice Heiple also disagreed with the majority's interpretation of the statute. He explained that the statute "could also be interpreted to simply mean that the new political party must list all of the candidates it intends to run for office. Thus, it is ambiguous." *Id.* at 1204.

13

822 N.E.2d at 913. But this rationale ignores the fact that, to appear on the ballot, a new party is also required to gather petition signatures equaling "not less than 5% of the number of voters who voted at the next preceding regular election" in a particular district or political subdivision. 5/10-2. By doing so, the new party shows "that it is able to muster support in the community." Thus, the fact that established parties enjoy "a minimum level of support in the community" does not actually serve to distinguish them from new parties.

Drawing all inferences in favor of Plaintiffs for purposes of a motion to dismiss, the court concludes that the complete slate requirement imposes a heavy burden on Plaintiffs' First Amendment rights, and that the requirement also treats similarly situated parties differently. The court next considers the regulatory interests put forward by the State as justifications for this substantial burden.

Defendants argue that the complete slate requirement serves various purposes: 1) it demonstrates that a new party has enough support to warrant its appearance on the ballot; 2) it eliminates voter confusion; and 3) it prevents party splintering and "factionalism" by requiring a party to agree upon its standard-bearers. The court will address these justifications in turn.

First, the state does have a legitimate interest in requiring candidates to make "some preliminary showing of a significant modicum of support" before allowing them to appear on a ballot. *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986); *see also Jenness v. Fortson*, 403 U.S. 431, 442 (1971). The Supreme Court has called the states' interest in avoiding frivolous candidacies and regulating the number of candidates who appear on the ballot "compelling." *Id*. at 194. But Defendants fail to explain why the

complete slate requirement is narrowly tailored—or even reasonably designed—to further this interest, when the Code also requires that a new party demonstrate that it has community support by meeting the signature requirement. The signature requirement is a much more direct way to measure support than the complete list requirement. The court also notes that, to the best of its knowledge, no other state has deemed the complete slate requirement a necessary mechanism to determine whether a party has sufficient support to appear on a ballot. Moreover, the fact that established parties are not required to meet the complete slate requirement suggests that the state's interest in the requirement is not great. The court concludes that the complete slate requirement does little to further the state's interest in requiring new parties to demonstrate that they have "a significant modicum of support" from the community.

The court next considers the argument that the complete slate requirement minimizes voter confusion. Avoiding voter confusion is certainly an important state interest. *Jenness*, 403 U.S. at 442. But Defendants' arguments as to why the complete slate requirement furthers this interest make little sense. Defendants argue that "[n]ot fielding a full slate can cause confusion about who is an independent and who is running with a party label." The court disagrees. Independent candidates appear on the ballot with the word "Independent" next to their name. New party candidates' names appear adjacent to their party's name. It is difficult to understand why the average voter would find this confusing.

Defendants also raise the possibility that "we might see multiple candidates in the same new party circulating petitions for the same office, causing more confusion for local election authorities." These was apparently the federal district court's rationale for

15

declaring the complete slate requirement valid in *Black*: to "ensur[e] that candidates run only once, on the ticket on which they are slated." 750 F. Supp. at 908. But that problem is resolved by requiring all candidates for a particular party to appear on the same nominating petition—which the Code requires. Requiring that petition to include names of candidates for all offices does little further to alleviate confusion or prevent overlapping candidates or tickets.

As to Defendants' argument that the complete slate requirement avoids inter-party splintering and excessive factionalism, the court agrees that those are legitimate state interests. *See Lee v. Keith*, 463 F.3d 763, 770 (7th Cir. 2006) (acknowledging the "important state interest" in "avoiding the political instability of party splintering and excessive factionalism and the ballot clutter of frivolous candidacies"). But again, the complete slate requirement does little to further this interest. A party can be required to agree on who its standard bearers will be without being required to present a candidate for every office. As the state can discourage inter-party splintering and factionalism by simply requiring a new party to circulate a single petition naming all of its candidates for office, the court finds no added value in the complete slate requirement. Moreover, as signature-gathering efforts take great commitment, organization, and resources, the signature requirement already encourages small parties with similar views to band together, further discouraging splintering and factionalism.

Balancing the heavy burden that the complete slate requirement places on Plaintiffs' First Amendment right of political association with the weak and logically flawed justifications Defendants have offered for the requirement, the court concludes that the allegations in Plaintiffs' Complaint plausibly suggest that they have a right to

relief, because the Code imposes restrictions on ballot access that are more severe than necessary to achieve the state's regulatory interests.

## IV. CONCLUSION

The court dismisses Plaintiffs' claims against the Board. Although the court finds that the filing deadline imposed by the Code is in itself a reasonable restriction justified by important regulatory interests, the Code's complete slate requirement imposes a heavy burden on Plaintiffs' voting and associational rights that is not justified by the state's regulatory interests, as set forth in Defendants' Motion to Dismiss. Accordingly, considering the restrictions together, the court finds that their combined effect is sufficient to suggest that Plaintiffs have a right to relief. The court therefore denies Defendants' motion to dismiss Plaintiffs' claims against the Board members.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED:  September 5, 2012