# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LIBERTARIAN PARTY OF ILLINOIS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 12-cv-02511 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| ILLINOIS STATE BOARD OF ELECTIONS, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiffs in this action for declaratory and injunctive relief challenge the constitutionality of the full slate requirement for new political parties seeking access to election ballots in the State of Illinois. The Libertarian Party of Illinois ("Libertarian Party"), its chairman Lupe Diaz, prospective candidate for Kane County Auditor Julie Fox, and Fox supporter John Kramer (collectively, "Plaintiffs") sued the members of the Illinois State Board of Elections and the Kane County Clerk (collectively, "Defendants") after Fox was excluded from the Kane County ballot for the November 2012 general election because her petition to run as the Libertarian Party candidate for County Auditor lacked the required number of signatures and did not list a full slate of candidates for her party. Plaintiffs claim that the requirement under the Illinois Election Code that, as a new political party, the Libertarian Party must field a complete slate of candidates at the county level to gain access to the ballot violates their rights under the First and Fourteenth Amendments to the United States Constitution. Now both Plaintiffs and Defendants have filed motions for summary judgment. For the reasons stated below, the Court grants Plaintiffs' motion (Dkt. No. 40) and denies Defendants' motion (Dkt. No. 44).

## BACKGROUND

The relevant facts are undisputed. Founded in 1972, the Libertarian Party is an affiliation of voters formed for the purpose of influencing public policy through a variety of means, including running candidates for public office and disseminating the party's views on policy issues through its candidates' campaigns. (Def. Resp. to Pl. Stmt. of Mat. Facts ¶ 1, Dkt. No. 48.) It is the Illinois affiliate of the national party by the same name. (*Id.*) Diaz is the chairman of the Libertarian Party; Fox, who resides in Kane County, sought to run as the party's candidate for Kane County Auditor in the general election held on November 6, 2012; and Kramer, also a resident of Kane County, sought to be able to circulate Fox's nomination petitions and to vote for her. (*Id.* ¶¶ 2-4.)

Under the Illinois Election Code, an "established political party" is defined as "[a] political party which, at the last election in any congressional district, legislative district, county, township, municipality or other political subdivision of district in the State, polled more than 5% of the entire vote cast within such territorial area or political subdivision." (*Id.* ¶ 11 (citing 10 Ill. Comp. Stat. 5/10-2).) The Libertarian Party is not currently an established political party in Kane County. (*Id.* ¶ 10.) As a result, it must meet the requirements for a "new political party" seeking to obtain access to the ballot at the local level. One such requirement is that it must submit a petition "signed by qualified voters equaling in number not less than 5% of the number of voters who voted at the next preceding regular election" in that political subdivision. 10 Ill. Comp. Stat. 5/10-2. Another is that it must file its nomination petition "not more than 141 but at least 134 days previous to the day of such election." 10 Ill. Comp. Stat. 5/10-6.

At issue in this lawsuit is yet a third requirement: that the new political party field a complete list of candidates for all offices in the political subdivision in which it wishes to complete. Specifically, as provided by the statute,

> [a]ny [nominating] petition for the formation of a new political party throughout the State, or in any such district or political subdivision . . . shall at the time of filing contain a complete list of candidates of such party for all offices to be filled in the State, or in such district or political subdivision as the case may be, at the next ensuing election to be held[.]

10 Ill. Comp. Stat. 5/10-2. This full slate requirement does not apply to candidates from established political parties or independent candidates. (Def. Resp. to Pl. Stmnt. of Mat. Facts ¶ 18, Dkt. No. 48.)

For the November 2012 election, Fox's nomination petition to run as the Libertarian Party candidate for Kane County Auditor contained 618 signatures and named her alone as a candidate for office. (Def. Stmnt. of Mat. Facts ¶ 9 & Ex. B, Dkt. No. 46.) On July 10, 2012, the Kane County Officers Electoral Board sustained an objection to Fox's petition. The board found Fox's petition deficient because (i) her 618 signatures fell short of the 6,543 that she was required to obtain (*i.e.*, 5% of the total of 129,050 votes that were cast in the preceding general election), and (ii) her petition did not list a complete slate of Libertarian Party candidates for all offices to be filled in Kane County, which for that election included the Circuit Clerk, County Recorder, States' Attorney, County Coroner, County Board Chairman, and Regional Superintendent of Schools. (Def. Stmnt. of Mat. Facts ¶¶ 9, 10, 12 & Ex. B, Dkt. No. 46.)

On April 5, 2012, Plaintiffs filed this lawsuit asserting claims under 42 U.S.C. § 1983 against the Illinois State Board of Elections and its individual members in their official capacities. Plaintiffs alleged that the application of the filing deadline, signature requirement, and full slate requirement for new political parties at the local level unconstitutionally burdened their First

Amendment rights to associate for advancement of their political beliefs and to vote effectively, and their Fourteenth Amendment rights to equal protection and due process of law. (Dkt. No. 1.) After Defendants moved to dismiss Plaintiffs' claims, the Court issued a Memorandum Opinion and Order dismissing the Illinois State Board of Elections as a Defendant because, as a state agency, it is immune from suit under the Eleventh Amendment. (Dkt. No. 22.) The Court also dismissed Plaintiffs' First and Fourteenth Amendment claims against the individual board members to the extent those claims challenged the filing deadline. The Court held that Plaintiffs constitutional claims could proceed against the individual board members, however, finding that "the [Illinois Election Code's] complete slate requirement imposes a heavy burden on Plaintiffs' voting and associational rights that is not justified by the state's regulatory interests." (*Id.* at 17.)

Plaintiffs subsequently filed an amended complaint naming Kane County Clerk John A. Cunningham, in his official capacity, as an additional Defendant. (Dkt. No. 26.) After discovery was completed, the parties filed the cross-motions for summary judgment that are now before the Court. (Dkt. Nos. 40, 44.) In their summary judgment motion, Plaintiffs state that while they originally sought relief from the signature and filing deadline requirements, they have abandoned those claims and are now challenging only the full slate requirement.[1]

**DISCUSSION**

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding such a motion, the Court examines the record in the light most favorable to the non-moving party, resolving all evidentiary conflicts in her favor and according her the

---

[1] Specifically, Plaintiffs state that they are no longer challenging the signature requirement and that in the ruling on the motion to dismiss, the Court "concluded that the filing deadline was not unconstitutional." (Dkt. No. 40-2 at 2.)

benefit of all reasonable inferences that may be drawn from the record. *Coleman v. Donahoe*, 667 F.3d 835, 842 (7th Cir. 2012).

**I.**

As an initial matter, Defendants contend that this Court need not decide whether the full slate requirement is constitutional in order to resolve this case. Instead, Defendants urge the Court to follow the well-established principle of judicial restraint, which counsels that a court generally should avoid reaching a constitutional question if there is some other ground upon which to dispose of a case. *See Escambia Cnty., Fla. v. McMillan*, 466 U.S. 48, 51 (1984); *see also Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will only decide the latter."); *Bhd. of Locomotive Eng'rs and Trainmen v. Union Pac. R.R.*, 522 F.3d 746, 750 (7th Cir. 2008) ("[I]t is a fundamental rule of judicial restraint that we ought not to pass on questions of constitutionality unless such adjudication is unavoidable.") (internal citation and quotation marks omitted). In this case, Defendants ask the Court to decline to reach the constitutional question and instead find that Plaintiffs' claims fail because Fox would have been excluded from the ballot anyway for having an insufficient number of signatures on her nominating petition.

But while Defendants attempt to frame their argument as one of constitutional avoidance, it is more appropriately considered as a standing argument. In essence, Defendants contend that Plaintiffs did not suffer any injury as a result of the full slate requirement since Fox was also ruled ineligible to appear on the ballot for the independent reason that she lacked the requisite signatures. By this theory, however, anyone who would be excluded from a ballot due to one restriction would not be able to challenge that restriction without first demonstrating that they

satisfied, or at least could satisfy, every other requirement. The law imposes no such condition. To the contrary, Fox and her supporters were not required to collect *any* signatures for her nomination petition (let alone the full 6,452) as a prerequisite to challenging the full slate requirement. *See Nader v. Keith*, 385 F.3d 729, 736 (7th Cir. 2004) (noting that, in a case where the plaintiff challenged several restrictions imposed on independent and third-party candidates, "[t]here would be no question of his standing to seek such relief in advance of the submission or even collection of any petitions"); *see also Sporhase v. Nebraska, ex rel. Douglas*, 458 U.S. 941, 945 n.2 (1982) ("Because of the reciprocity requirement of § 46-613.01, appellants would not have been granted a permit had they applied for one. Their failure to submit an application therefore does not deprive them of standing to challenge the legality of the reciprocity requirement."); *Stevenson v. State Bd. of Elections*, 638 F. Supp. 547, 550 (N.D. Ill. 1986), *aff'd* 794 F.2d 1176 (7th Cir. 1986) ("The defendants in this case suggest that the plaintiffs have no standing because they have not tendered at this late date their petitions before the board and had them rejected. But this gesture of formality is unnecessary.").

Plaintiffs are harmed by the full slate requirement because it would prevent Fox from appearing on the ballot with her chosen party affiliation regardless of whether she fulfilled the other requirements. Indeed, one could imagine that the fact that Fox's petitions did not list a full slate of Libertarian Party candidates might have deterred interested supporters who, aware of the full slate requirement, were hesitant to sign what appeared to be an infirm petition. Thus, this Court rejects Defendants' suggestion that it avoid the constitutional issue by finding that Fox was properly ruled off the ballot due to an insufficient number of signatures and proceeds to consider the merits of Plaintiffs' claim.[2]

---

[2] Similarly, the fact that the November 2012 election has long since been decided does not render Plaintiffs' claims moot, as the ballot restrictions they challenge prevented Fox and the Libertarian Party

## II.

"The First Amendment, as incorporated against the states by the Fourteenth Amendment, 'protects the right of citizens to band together in promoting among the electorate candidates who espouse their political views.'" *Lee v. Keith*, 463 F.3d 763, 767-68 (7th Cir. 2006) (quoting *Clingman v. Beaver*, 544 U.S. 581, 586 (2005)). Thus, restrictions imposed by a state on a political party's or candidate's access to the election ballot may impermissibly infringe on First Amendment rights. In addition, ballot access restrictions that treat similarly-situated parties or candidates unequally may violate the Fourteenth Amendment right to equal protection of the laws. *Green Party of Tennessee v. Hargett*, 791 F.3d 684, 695 (6th Cir. 2015) (finding that a ballot access restriction that "imposes a greater burden on minor parties without a sufficient rationale put forth by the state . . . violates the Equal Protection Clause"); *see also Anderson v. Celebrezze*, 460 U.S. 780, 786 n.7 (1980); *Lubin v. Panish*, 415 U.S. 709, 713-714 (1974).

In *Burdick v. Takushi*, 504 U.S. 428 (1992), the Supreme Court articulated the standard to be applied when evaluating constitutional challenges to state election laws:

> A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights. Under this standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to severe restrictions, the regulation must be narrowly drawn to advance a state interest of

---

from appearing on the ballot and continue to restrict the political activities of potential new parties and their members. *Lee v. Keith*, 463 F.3d 763, 767 (7th Cir. 2006); *see also Storer v. Brown*, 415 U.S. 724, 737 (1974) ("The . . . election is long over . . . but this case is not moot, since the issues properly presented, and their effects on independent candidacies, will persist as the . . . statutes are applied in future elections. This is, therefore, a case where the controversy is capable of repetition, yet evading review.") (internal quotation marks and citations omitted); *Krislov v. Rednour*, 226 F.3d 851, 858 (7th Cir. 2000) (holding that, even though the date of the primary in which the plaintiffs desired to participate had long since passed, because the ballot access restriction at issue was still in force with respect to future elections "this case is capable of repetition yet evading review, a recognized exception to the mootness doctrine").

compelling importance. But when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions.

*Id.* at 434 (internal citations and quotations omitted); *see also Hargett*, 791 F.3d at 693 (applying the test established in *Burdick* and *Anderson* in an equal protection challenge to ballot restrictions for minor parties); *Lee*, 463 F.3d at 767-68 (applying the *Burdick* standard to conclude that certain restrictions on ballot access for independent candidates combined to severely burden the First and Fourteenth Amendment rights of candidates and voters).

In Illinois, new political parties are permitted to form and obtain access to the ballot at the local level. There are, however, certain restrictions with which new political parties must first comply in order to do so. New political parties must submit a nominating petition 134 to 141 days prior to the upcoming election that lists candidates for all offices to be filled at the upcoming election and has been signed by at least 5% of the number of voters who voted at the next preceding regular election. 10 Ill. Comp. Stat. 5/10-2, 5/10-6. In contrast, established political parties do not need to run candidates for all offices in the local election. In this respect the Illinois Election Code places a burden on the First and Fourteenth Amendment rights of new parties, their candidates, and their supporters, which is not shared by established parties, their candidates, and their supporters.

Defendants contend that the full slate requirement protects the legitimate state interest of ensuring the existence of sufficient support to permit identification as a party. But there must be some logical relationship between the asserted state interest and the burden imposed upon the constitutional rights of those seeking to appear on the ballot. *Summers v. Smart*, 65 F. Supp. 3d 556, 564 (N.D. Ill. 2014). Perhaps a new party's ability to list candidates for every open position in the upcoming election tends to indicate the existence of a well-supported party, but the

signature requirement (no longer challenged here) also serves that purpose and does it better. While the signature requirement demands a new party to show public support roughly comparable to that of an established party, "adding more *candidates* to the mix does not show that more support exists among the electorate." *Id.* (emphasis in original).

Defendants also argue that the full slate requirement serves the state's interest in preventing factionalism and party-splintering. It is unclear, however, how it serves those interests. Again, the signature requirement would seem better suited to prevent factionalism and party-splintering, as members of a new political party would have an interest in joining forces with similarly-minded individuals to gather the requisite signatures. In addition, the full slate requirement would not prevent two new parties espousing the same political ideology from filing nominating petitions under different party names with full slates on each petition. Additionally, and importantly, the Illinois Election Code requires all candidates for a particular party to appear on the same nominating petition, which would prevent overlapping candidates or tickets.

That the full slate requirement is ill-suited to achieve the goals espoused by Defendants is further demonstrated by the potential for unintended consequences. Requiring a new political party to field candidates for each and every position so that it can appear on the ballot for even one position could encourage new parties to enlist strawmen candidates—who may be uninterested or unqualified to run for their designated positions—just to fill empty slots. The fact that a new party does not have a viable candidate to put forward for County Coroner, for example, does not indicate much about the strength of the party's overall support or its legitimacy. Moreover, as another judge in this District recently pointed out, in some cases a new party might be required to run a candidate for a position to which that party is ideologically opposed. *See Smart*, 65 F. Supp. 3d at 563 n.3 (pointing to Lieutenant Governor as an example of a political

office in Illinois that some new parties might oppose filling as a matter of principle). The suggestion that a full slate of candidates serves as an indicator of a party's legitimacy is further weakened by the fact that even established parties frequently fail to field candidates for every position on the ballot,[3] yet the Illinois Election Code does not restrict their access to the ballot as a result.

Defendants place a great deal of emphasis on the fact that "only a small number of states are as generous as Illinois in permitting new political party formation at the local level." (Def. Reply at 4, Dkt. No. 55.)[4] There are at least nine states, including Illinois, that allow new political parties to access the ballot at the local level. (Pl. Sur-Reply at 1, Dkt. No. 57-1.) Defendants' observation might support the conclusion that Illinois is not required to allow new party formation at the local level, but it does not relieve the state from its obligation, once it determines to establish a process for party formation and participation at the local level, to do so in a way that comports with the constitution. Once new political parties are permitted access to the ballot at the local level, there is no reason to permit the state to enact severe restrictions that are not narrowly tailored and do not advance compelling state interests.

---

[3] The Court provided examples in the Memorandum Opinion and Order dated September 5, 2012 addressing Defendants' motion to dismiss. (*See* Dkt. No. 22 at 12-13.) More recent ballots demonstrate that the previously-cited examples were not mere anomalies. For example, the 2014 General Election ballot for Kane County listed no Democratic Party candidate for County Clerk, County Treasurer, or County Board Member for Districts 9, 13, 15, or 21; and no Republican Party candidate for County Board Member for Districts 1, 3, 7, or 17.
http://kanecountyelections.com/Candidates/Candidates.aspx?ElectID=6&PartyCode=NP&Lang=1 (last visited February 23, 2016). The Court takes judicial notice of information available to the public about the Kane County ballot. *See Denis v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (taking judicial notice of information found on the website of a government agency).

[4] Defendants rely on the deposition testimony of Richard Winger, a witness who also submitted an affidavit for Plaintiffs regarding the legislative history of the Illinois full slate requirement (Dkt. No. 40-3). Winger is a member of the Libertarian Party in California and has been the editor of a newsletter called Ballot Access News since 1985. (Dkt. No. 46-3 at 6, 11.) Winger has also testified as a witness in a number of election law cases. (Dkt. No. 40-4.)

Finally, Defendants point to prior cases from Illinois state courts and this District Court upholding the full slate requirement. *See Socialist Workers Party of Illinois v. Ogilvie*, 357 F. Supp. 109, 113 (N.D. Ill. 1972) (finding no First Amendment violation for failing to certify a new political party with no full slate of candidates); *Reed v. Kusper*, 607 N.E.2d 1198, 1202 (Ill. 1993) (noting that the statute is "unambiguous" in requiring a new party to "disclose candidates for all available positions"); *Green Party v. Henrichs*, 822 N.E.2d 910 (Ill. App. Ct. 2005) (finding the full slate requirement did not violate due process and equal protection rights).

Notably, the Illinois appellate court in *Henrichs*, whose opinion addressed the full slate requirement in the most detail of the cases cited, did not consider certain arguments before the Court in the present case that militate in favor of finding the full slate requirement to be a severe burden. First, *Henrichs* did not address the signature requirement for new political parties and whether that would be a reasonable means of having a new party show "that it is able to muster support in the community." *Henrichs*, 822 N.E.2d at 447. Second, in *Henrichs*, the court noted that the full slate requirement does not prevent any individual from running, since they would be able to run as independents. *Id.* This conclusion, however, fails to address the significance of political party membership. As explained by the Court in response to Defendants' motion to dismiss in this case, "[p]olitical party membership and independent candidacy 'are entirely different and neither is a satisfactory substitute for the other.'" (Mem. Op. at 11, Dkt. No. 22 (quoting *Storer v. Brown*, 415 U.S. 724, 745-45 (1974)).

Plaintiffs also correctly point out that the earlier cases were decided at a time when independent candidate petitions had to be filed six months earlier than new party petitions. (Pl. Mot. for Summ. J. at 7-8, Dkt. No. 40-2.) The full slate requirement therefore served the purpose of preventing independent candidates from creating "sham new parties to avoid the earlier filing

deadline." (*Id.* at 8.) As a result of the Seventh Circuit's decision in *Lee v. Keith*, 463 F.3d 763 (2006), the petition deadlines were made identical for new parties and independent candidates. The rationale for needing a separate full slate requirement for new parties therefore diminished substantially after that point.

Illinois is the only state with a full slate requirement. Despite Defendants' arguments to the contrary, the Court finds it meaningful that out of 49 other states and the District of Columbia—with their wide variety of approaches to local and state elections—none have seen fit to impose a comparable requirement. Because the Court finds that the full slate requirement imposes a severe burden on the First and Fourteenth Amendment rights of new parties and their supporters, and that the requirement is not narrowly tailored and does not advance a compelling state interest, the Court grants summary judgment in favor of Plaintiffs.

## CONCLUSION

Accordingly, the reasons discussed above, the Court finds that the full slate requirement for new political parties under the Illinois Election Code violates the First and Fourteenth Amendments to the United States Constitution on its face and as applied to Plaintiffs in this case. Accordingly, Plaintiffs' motion for summary judgment (Dkt. No. 40) is granted and Defendants' motion for summary judgment (Dkt. No. 44) is denied.

ENTERED:

Dated: February 24, 2016

_____
Andrea R. Wood
United States District Judge